```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
LARRY SEABROOK,                                             :
                                                            :
                                    Petitioner,             :
                                                            :      16-CV-1676 (VSB) (JLC)
                - against -                                 :
                                                            :         OPINION & ORDER
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                    Respondent.             :
                                                            :
------------------------------------------------------------X
```

Appearances:

Fitzmore Hezekiah Harris
New York, NY
*Counsel for Petitioner*

David William Denton, Jr.
Michael Daniel Neff
Karl N Metzner
United States Attorney's Office
Southern District of New York
New York, NY
*Counsel for Respondent*

VERNON S. BRODERICK, United States District Judge:

      Before me is Petitioner Larry Seabrook's ("Petitioner" or "Seabrook") objections, (Doc. 34), to Magistrate Judge James L. Cott's Report and Recommendation ("Report"), (Doc. 29), recommending that I deny Seabrook's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 ("Petition"), (Doc. 5), seeking to vacate his sentence and conviction in *United States v. Seabrook*, No. 10-CR-87 (DAB) (S.D.N.Y. Jan. 17, 2013). For the reasons that follow, the Petition is DENIED.

I. **Background and Procedural History**

On July 26, 2012, after a jury trial before United States District Judge Deborah A. Batts, Seabrook was convicted on nine counts of conspiring to commit and committing mail and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, 1349. On January 8, 2013, Judge Batts sentenced Seabrook to a term of 60 months' imprisonment, and ordered him to pay restitution in the amount of $619,715.24. (10 Cr. 87, Doc. 115.) On March 5, 2013, Seabrook moved for a new trial on the grounds of newly discovered evidence, (*id.* Doc. 122), which Judge Batts denied, (*id.* Doc. 127). *See also United States v. Seabrook*, 10-CR-87 (DAB), 2013 WL 4754331 (S.D.N.Y. Aug. 26, 2013). On appeal, the Second Circuit affirmed Seabrook's convictions, *United States v. Seabrook*, No. 13-228-cr (2d Cir. May 27, 2015),[1] and Seabrook did not file a petition for a writ of certiorari in the United States Supreme Court.

Seabrook initially filed his petition for writ of habeas corpus under 28 U.S.C. § 2254, proceeding pro se. (Doc. 1.) On March 9, 2016, I entered an Order to Amend construing Seabrook's filing as being brought pursuant to 28 U.S.C. § 2255, and granting Seabrook the opportunity to refile the petition. (Doc. 4.) In compliance with my order, Seabrook filed the Petition on April 7, 2016. (Doc. 5.) On April 20, 2016, I concluded that the Petition should not be summarily dismissed, and entered an Order to Respond. (Doc. 6.) Because the Petition included ineffective assistance of counsel claims, on June 29, 2016, I entered an order granting the Government's motion to compel statements from Seabrook's counsel responding to the allegations of ineffective assistance. (Docs. 10, 11.) In accordance with my order, on September 2, 2016, Seabrook's appellate counsel filed an affidavit, (Doc. 14), and on September 19, 2016,

---

[1] The Second Circuit's summary order is available at *United States v. Seabrook*, 613 F. App'x 20, 23 (2d Cir. 2015). On July 7, 2014, the Second Circuit remanded the case for the District Court's determination in the first instance whether Seabrook's Sixth Amendment right to a public trial had been violation. *Id.* at 30. The case was subsequently reassigned from Judge Batts to Judge P. Kevin Castel on August 21, 2014.

2

Seabrook's trial counsel filed a declaration, (Doc. 16). On December 19, 2016, the Government filed an opposition memorandum of law, (Doc. 19), and on March 20, 2017, Seabrook filed his reply brief, (Doc. 25). On August 9, 2018, pro bono counsel for Seabrook entered a notice of appearance. (Doc. 26.) On November 14, 2018, I referred this case to Magistrate Judge Cott for a report and recommendation, (Doc. 28), which was filed on February 13, 2019, (Doc. 29). Counsel for Seabrook timely filed objections to the Report on April 3, 2019, (Doc. 34), and the Government filed an opposition memorandum of law on May 24, 2019, (Doc. 40). On July 9, 2020, I received a letter from George C. Crouch in support of the Petition, (Docs. 42, 46-1), and requested briefing on whether the letter could be considered, (Doc. 41), which the parties submitted, (Docs. 43, 46).

## II.     Legal Standards

### A.     *Review of a Magistrate Judge's Report*

Reviewing a magistrate judge's report and recommendation, I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). I review de novo the portions of the Report to which timely and specific written objections are made. *Id.*; Fed. R. Civ. P. 72(b)(3). "The objection must be specific and clearly aimed at particular findings in the R&R." *Bussey v. Rock*, No. 12-CV-8267 (NSR) (JCM), 2016 WL 7189847, at *2 (S.D.N.Y. Dec. 8, 2016) (internal quotation marks omitted). "Otherwise, the court will review the R&R strictly for clear error when a party makes only conclusory or general objections, or simply reiterates the original arguments." *Id*. Under a clear error standard of review, "[s]o long as there is a basis in the evidence for a challenged inference, [the court] do[es] not question whether a different inference was available or more likely." *United States v. Freeman*, 443 F. App'x 664, 666 (2d Cir. 2011) (quoting *Siewe v. Gonzales*, 480

F.3d 160, 168 (2d Cir. 2007)).

Because Seabrook was proceeding pro se at the time the Petition was filed, I construe his Petition liberally and interpret it "to raise the strongest arguments [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted). However, this mandate does not apply to Seabrook's objections to the Report, which were made by counsel.

### B.     *Habeas Relief Under 28 U.S.C. § 2255*

28 U.S.C. § 2255 authorizes any prisoner in custody under sentence of a federal court "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; [] (2) was entered by a court without jurisdiction to impose the sentence; [] (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255)). The petitioner in a § 2255 proceeding bears the burden of proof by a preponderance of the evidence. *See Triana v. United States*, 205 F.3d 36, 40 (2d Cir. 2000).

Unless the motion, case files, and record "conclusively show that the prisoner is entitled to no relief," a court must "grant a prompt hearing" and make findings of fact and reach conclusions of law regarding the issues raised in the motion. *Id*. § 2255(b). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013). Where the asserted basis

for relief is ineffective assistance of counsel, a hearing is required only "where the petitioner has made a 'plausible claim'" for a hearing. *Morales v. United States*, 635 F.3d 39, 45 (2d Cir. 2011) (internal quotation marks omitted).  The movant's assertions in support of the motion need not be assumed credible if they are contradicted by the record. *See Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009); *see also Fermin v. United States*, 859 F. Supp. 2d 590, 602 (S.D.N.Y. 2012) (finding that a testimonial hearing is not necessary when it would not succeed in proving additional material facts).

### C. *Ineffective Assistance of Counsel*

Pursuant to *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "[t]he question of ineffective assistance is determined by a two-part test.  A defendant must demonstrate '(1) that counsel's performance was so unreasonable under prevailing professional norms that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment; and (2) that counsel's ineffectiveness prejudiced the defendant such that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Habbas*, 527 F.3d 266, 273 (2d Cir. 2008) (quoting *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004)).  "*Strickland*'s two-prong test applies equally to claims of ineffective assistance of appellate counsel on a defendant's first appeal as of right." *Aparicio v. Artuz*, 269 F.3d 78, 95 (2d Cir. 2001).  However, to demonstrate deficient performance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument.  Counsel is not obliged to advance every nonfrivolous argument that could be made." *Id*.  Instead, the petitioner must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994).

5

With respect to the first prong—deficient performance—the inquiry is "highly deferential" and requires that "every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The petitioner seeking relief must overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance," *i.e.*, that counsel's conduct reflected reasonable strategic choices. *Id.*

With regard to the second prong—prejudice—a reasonable probability of a different outcome means a "probability sufficient to undermine confidence in the outcome." *Id.* at 694. Specifically, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (internal quotation marks omitted); *see also Strickland*, 466 U.S. at 693 ("[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."). Moreover, "an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). Second Circuit precedent generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Although a petitioner must satisfy both prongs to obtain relief, the Supreme Court has stated that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is

6

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697; *see also Brown v. Artuz*, 124 F.3d 73, 80 (2d Cir. 1997) (declining to address the first prong of Strickland on the ground that the defendant could not satisfy the prejudice prong).

### III.   Discussion

#### A.   *Jurisdiction*

"It is well established . . . that to secure § 2255 review, a petitioner 'must satisfy the jurisdictional "in custody" requirement' of the statute." *United States v. Rutigliano*, 887 F.3d 98, 104 (2d Cir. 2018) (quoting *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). This requirement must be satisfied "at the time the petition is filed, and a petitioner under supervised release may be considered 'in custody.'" *Scanio*, 37 F.3d at 860; *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006) ("Post-release supervision, admitting of the possibility of revocation and additional jail time, is considered to be 'custody.'"); *see also Schwartz v. United States*, 888 F. Supp. 24, 26 (S.D.N.Y. 1995) ("In this case, upon his release, Schwartz was subject to a term of supervised release of three years. Thus, at the time the instant petition was filed, he was still 'in custody' within the meaning of the statute."). On January 8, 2013, Seabrook was sentenced to 60 months' imprisonment followed by two years' supervised release. (*United States v. Seabrook*, 10 Cr. 87 (PKC) (S.D.N.Y. Feb. 4, 2010), Doc. 115.) Seabrook was released from imprisonment on July 14, 2017. *See Find an Inmate*, Larry Seabrook, Reg. #: 63107-054, Fed. B. of Prisons (last accessed Sept. 22, 2020), https://www.bop.gov/inmateloc/. Therefore, Seabrook met the "in custody" requirement at the time the Petition was filed on April 7, 2016, and further was "in custody" when the Report was filed on February 13, 2019.

However, "[u]nlike the 'in custody' requirement, mootness is not fixed at the time of

7

filing but must be considered at every stage of the habeas proceeding." *Nowakowski v. New York*, 835 F.3d 210, 217 (2d Cir. 2016). "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). But, "a habeas petition does not necessarily become moot when the order it challenges is no longer in effect, so long as the petitioner suffers some concrete and continuing injury or collateral consequence resulting from the challenged order." *Id.* (internal quotation marks omitted); *see also Nowakowski*, 835 F.3d at 217–18. Because Seabrook was convicted of a felony under federal law, a "presumption of 'continuing collateral consequences,'" *Nowakowski*, 835 F.3d at 217–18 (quoting *Spencer v. Kemna*, 523 U.S. 1, 8 (1998)), applies if Seabrook can "identify at least some collateral consequence that threatens [him]," *id.* at 225. Under this approach, "the most generalized and hypothetical of consequences a[re] sufficient to avoid mootness in challenges to conviction." *Id.* at 223 (quoting *Spencer*, 523 U.S. at 10). "Once the petitioner has identified specific collateral consequences, the government may attempt to 'prove . . . that there is 'no possibility' such consequences will attach to [the petitioner's] conviction.'" *Dhinsa v. Krueger*, 917 F.3d 70, 77 n.5 (2d Cir. 2019) (quoting *Nowakowski*, 835 F.3d at 225 (quoting *Sibron v. New York*, 392 U.S. 40, 57 (1968))).

In addition to the more remote continuing collateral consequences identified in *Nowakowski*, the Second Circuit has also noted that that "monetary loss is a quintessential injury in fact, and even a small financial loss suffices to establish standing," *Dhinsa*, 917 F.3d at 78, such that a "special assessment attached to [a] conviction constitutes a concrete, redressable injury sufficient to establish Article III standing." *Dhinsa*, 917 F.3d at 80. In this case, Seabrook

8

incurred a $900.00 special assessment, was subject to paying restitution in the amount of $619,715.24, including the payment of twenty percent of any future earnings made or income received toward restitution, and forfeiture in the amount of $418,252.53.  (10 Cr. 87, Doc. 115.) Furthermore, Seabrook was subject to an order of forfeiture of substitute assets, which included forfeiture of Seabrook's "title and interest in any and all funds, benefits, rights to disbursements, or other property held on behalf of, or distributed to, [] Seabrook, by the New York City Employee Retirement System, Pension Number 368879."  (10 Cr. 87, Doc. 216, at 4.) Accordingly, it is clear that Seabrook suffers from concrete and continuing injury or collateral consequence resulting from his challenged conviction, and thus Article III jurisdiction is not absent due to Seabrook's release from custody or the termination of his supervised release.

### B. *Affidavit of George Crouch*

On July 9, 2020, I received a letter from George C. Crouch in support of the Petition, (Doc. 42), and requested briefing on whether the letter could be considered, (Doc. 41), which the parties submitted, (Docs. 43, 46).  After the Government noted that the letter was unsworn, counsel for Seabrook filed sworn and notarized version of the letter in the form of an affidavit. (Doc. 46-1.)  Although I consider the substance of the affidavit in this Opinion & Order, I find the allegations in the affidavit to be entirely conclusory.   Furthermore, it is unclear from the affidavit what level of personal knowledge Crouch has of the circumstances relevant to the Petition.

### C. *Claims Three, Four, Six, Eight, Ten, and Thirteen*

Seabrook first objects to the Report's conclusion that "under the 'mandate rule,' Seabrook is procedurally barred from relitigating the claims set forth in grounds three, four, six, eight, ten, and thirteen." (Report 18.)  As the Report notes, these claims involve arguments that

9

Seabrook's trial and appellate attorneys provided ineffective assistance because they failed to raise arguments about the alleged perjury and separate fraudulent scheme of two witnesses at Seabrook's trial—Tyrone Duren and Philesha Juse. Although ineffective assistance claims may be procedurally barred if they were raised and considered on direct appeal, ineffective assistance claims are also barred if "the factual predicates of those claims, while not explicitly raised on direct appeal, were nonetheless impliedly rejected by the appellate court mandate." *Yick Man Mui v. United States*, 614 F.3d 50, 53–54 (2d Cir. 2010); *see also United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009). The Report concluded that because "[t]he alleged errors identified in grounds three, four, six, eight, ten, and thirteen were all raised in Seabrook's motion for a new trial and . . . rejected by both the district court and the Second Circuit," "Seabrook cannot escape the procedural bar by 'repackaging' these same claims as ineffective assistance of counsel arguments." (Report 18.) Seabrook's objection similarly admits that "the issues of Jude and Duren's perjury and fraudulent schemes were decided on Seabrook's motion for a new trial and on his direct appeal." (Doc. 34, at 10.) Reviewing the record, I agree with the Report's conclusion that Seabrook's restyling of these claims as ineffective assistance of counsel claims does not save them from § 2255's procedural bar, and overrule Seabrook's corresponding objection.

### D. *Claim Nine*

Seabrook objects to the Report's conclusion that, with respect to Seabrook's ninth ground for relief, Seabrook has provided only conclusory allegations to support his theory of the evidence, and therefore that appellate counsel was not ineffective for failing to address Seabrook's meritless theories on appeal. As an initial matter, I find that Seabrook's ninth ground for relief was waived by Seabrook's failure to include its supporting allegations in the Petition.

In addition, I find in the alternative that the claim fails on the merits.

Before I address the merits of the ninth ground for relief, I review Judge Cott's finding that Seabrook waived this ground for relief. Seabrook's ninth ground for relief—which generally refers to alleged perjury by trial witness Jude—failed to identify any specific evidence of Jude's perjury. It was only until Seabrook filed his reply brief that he articulated a more specific theory that Jude lied about receiving bridge loans in lieu of a salary. Accordingly, as Magistrate Judge Cott concluded, this argument was waived. Although pro se pleadings are to be construed liberally, Seabrook's pro se status does not exempt him from this court's waiver rules. *See Simpson v. Oakes*, 640 F. App'x 86, 88 (2d Cir. 2016) (deeming arguments first raised in a pro se reply brief waived (citing *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir.1996) (declining to consider argument raised for first time in pro se litigant's reply brief)). This is especially appropriate in the instant case, as in my Order to Amend I "caution[ed] [Seabrook] that if he wishe[d] to pursue this § 2255 motion, he must include *all* of his available grounds for relief." (Doc. 4, at 4.) My Order to Amend further stated that "[u]nder Rule 2(b) of the Rules Governing Section 2255 Cases, a motion must specify all of a movant's available grounds for relief, setting forth the facts supporting each of the specified grounds and stating the relief requested. A motion must permit the Court and the respondent to comprehend both the movant's grounds for relief and the underlying facts and legal theory supporting each ground." (*Id.*) Thus, although I construe Seabrook's pleadings liberally given his pro se status, I still find that Seabrook's ninth ground for relief—that appellate counsel was ineffective for failing to argue that Jude committed perjury with respect to the bridge loans she received—was waived.

Regarding the merits, to demonstrate deficient performance of appellate counsel, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous

11

argument" as "[c]ounsel is not obliged to advance every nonfrivolous argument that could be made." *Aparicio*, 269 F.3d at 95. Instead, Seabrook must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." *Henderson*, 13 F.3d at 533. It is clear from the record in this case that Seabrook cannot meet this standard with respect to counsel's failure to raise on appeal Seabrook's new theory of Jude's perjury. First, I adopt Magistrate Judge Cott's interpretation of Jude's actual testimony at trial—which Seabrook cites selectively and misconstrues—regarding her receipt of bridge loans in lieu of a salary. (Report 20–21.) In light of Jude's actual testimony, Seabrook's allegations regarding Jude's testimony does not amount to witness perjury. Second, Seabrook's post-trial motions and appeal demonstrate the futility of Seabrook's instant argument. After Seabrook was convicted, he moved for a new trial and to vacate his conviction in part citing newly discovered evidence of Jude and Duren's alleged separate perjured testimony involving a forged check and time sheet scheme. Although Judge Batts rejected Seabrook's interpretation of this evidence, she also recognized in her Rule 33(b) Memorandum & Order that, during trial, there was a plethora of "evidence of Jude's past acts of forgery and fraudulent conduct." *Seabrook*, 2013 WL 4754331, at *3. Accordingly, Judge Batts concluded that even if Jude committed perjury regarding her involvement in a separate fraudulent scheme, that would not change the jury's assessment of the evidence involving Seabrook or the fact that there was "overwhelming evidence supporting" Seabrook's conviction. *Id.* at *4. Judge Batts further observed that "defense counsel frequently insinuated that Jude and Duren engaged in fraudulent schemes, independent of Seabrook, so the forged checks and time sheets" would have been "merely cumulative." *Id.* at *5. On appeal, the Second Circuit labeled Judge Batt's opinion "thoughtful," and itself concluded "that Seabrook made no showing of perjury and that even if perjury had

occurred, there were insufficient grounds . . . to grant Seabrook's motion." *Seabrook*, 613 F. App'x at 25. Therefore, I cannot conclude that appellate counsel was deficient for failing to argue on appeal Seabrook's new theory of Jude's perjury, which is not supported by the evidence, and certainly not "clearly and significantly" stronger than the perjury-related arguments that appellate counsel did present, unsuccessfully, on appeal.[2]

### E.   *Claim Eleven*

Seabrook objects to the Report's conclusion that Seabrook's eleventh ground for relief—that appellate counsel was ineffective for failing to present certain *Brady* arguments on appeal—fails to adequately state an underlying *Brady* claim, and therefore fails to demonstrate ineffective assistance of counsel. Seabrook's objections to the Report merely reiterate the original arguments in support of the Petition and are conclusory. Accordingly, I review the Report's conclusions regarding Seabrook's eleventh claim for clear error, and find none. The Report's rejection of Seabrook's eleventh claim is thorough and based on a detailed review of the trial record, and I adopt this portion of the Report.

### F.   *Claims One, Seven, and Fourteen*

Seabrook does not object to the Report's conclusions regarding his first, seventh, and fourteenth grounds for relief. Accordingly, I review these portions of the Report for clear error, and find none. Again, Magistrate Judge Cott's assessment of these claims is thorough, and I adopt these portions of the Report.

---

[2] For the same reasons, and because many of the perjury-related arguments presented by Seabrook's twelfth claim—prosecutorial misconduct related to the government's use of alleged false statements at trial—are procedurally barred as discussed in Part III.B, Seabrook's twelfth ground for relief fails. Additionally, I find that Seabrook's second and fifth grounds for relief fail. In his second claim, Seabrook argues that his trial counsel was ineffective for failing to cross-examine Duren using the fraudulent time sheets. In his fifth claim, Seabrook argues that his trial counsel was ineffective for failing to impeach Duren with his involvement in the forged check scheme. As Judge Batt's and the Second Circuit's opinions demonstrate, further exploration of this evidence at trial would not have impacted the overwhelming evidence of Seabrook's guilt. *Seabrook*, 2013 WL 4754331, at *5; *Seabrook*, 613 F. App'x at 25.

### IV. <u>No Evidentiary Hearing Is Required</u>

As indicated above, § 2255 provides that a court shall hold an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." When there are no material facts in dispute or a petitioner makes only vague or conclusory allegations, the Court may base its decision on the parties' written submissions. *See Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013). In light of my discussion of the merits, I find that an evidentiary hearing is not necessary.

### V. <u>Conclusion</u>

For the foregoing reasons, Seabrook's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. Because there has been no substantial showing of the denial of a constitutional right, no certificate of appealability shall issue. *See Krantz v. United States*, 224 F.3d 125, 127 (2d Cir. 2000). The Clerk is directed to close this case.

SO ORDERED.

Dated: September 27, 2020
      New York, New York

*Vernon Broderick*
Vernon S. Broderick
United States District Judge